JUDGE DAVID GUADERRAMA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

FILED
2022 NOV 14  PM 12: 19
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY LA
          DEPUTY

| | |
|---|---|
| **BRANDON CALLIER,** § § § | |
| Plaintiff, § § | |
| v. § § | |
| **SAVE AMERICA JOINT FUNDRAISING COMMITTEE**, a Virginia Non-profit/charitable Corporation § § § § § § § | EP22CV0421 |
| Defendants. § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, BRANDON CALLIER, brings this action against Defendant Save America Joint Fundraising Committee and alleges based on personal knowledge and information, and belief, as follows:

### PRELIMINARY STATEMENT:

1. As the Supreme Court recently explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. . . . For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Pol. Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

2. Plaintiff Brandon Callier ("Plaintiff") brings this action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, alleging that Defendant Save America Joint

1

Fundraising Committee sent a series of automated text messages for the purposes of commercial solicitation by contacting Plaintiff's cellular telephone without prior express written consent and not related to any emergency purpose, which is prohibited by the TCPA.

3. Plaintiff never consented to receive any of these automated text messages.

## PARTIES:

4. Plaintiff is BRANDON CALLIER ("Plaintiff"), a natural person, who resides in El Paso, Texas, and is a citizen of the State of Texas, and was the individual who received the alleged phone calls in this case on his private mobile telephone, and was a resident of Texas during the calls, in this case in El Paso County, Texas.

5. Defendant SAVE AMERICA JOINT FUNDRAISING COMMITTEE ("SAJFC") is a political action committee registered with the United State FEC Identification Number C00770941. Its custodian of records and treasurer is Bradley Crate, 138 Conant St, 2nd Fl, Beverly, MA 01915. The Committee can be served at its registered address of 138 Conant St, 2nd Fl, Beverly, MA 01915.

## JURISDICTION AND VENUE

6. **Jurisdiction**. This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Ser's., LLC*, 565 U.S. 368, 372 (2012).

7. **Personal Jurisdiction**. This Court has specific personal jurisdiction over the defendant because they have repeatedly placed calls to Texas residents and derive revenue from donation solicitations to Texas residents, including the Plaintiff. Defendants maintain offices in this District and operate their business within this district.

**8.     Venue.** Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims the calls and sale of goods and services directed at Texas residents, including the Plaintiff occurred in this District and because the Plaintiff was residing in the Western District of Texas when he received a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

## Statutory Background

## The Telephone Consumer Protection Act

**9.**     In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing ... can be an intrusive invasion of privacy[.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

### The TCPA Prohibits Automated Telemarketing Calls

**10.**     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice ... to any telephone number assigned to a ... cellular telephone service ... or any service for which the called party is charged for the call." See 47 U.S.C. § 227(b)(l)(A)(iii).

**11.**     The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(l)(A). See 47 U.S.C. § 227(b)(3).

**12.**     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater

3

nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

**13.** The FCC also recognized that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, CG Docket No. 02-278, Report and Order, 18 F.C.C. Rcd. 14014, 14115 ¶ 165 (2003).

**14.** In 2013, the FCC required prior express written consent for all autodialed or prerecorded telemarketing calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]"
> In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

The National Do-Not-Call Registry

**15.** The National Do Not Call Registry allows consumers to register their telephone numbers and thereby indicate their desire not to receive telephone solicitations at those numbers. See 47 C.F.R. § 64.1200(c)(2). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." Id.

**16.** The TCPA and implementing regulations prohibit the initiation of telephone solicitations to residential telephone subscribers to the Registry. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c)(2).

4

17. The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

## FACTUAL ALLEGATIONS

18. Defendant SAJFC is a registered political action committee under IRS code 501(c)(3).

19. Defendant SAJFC uses a tax-free designation to solicit donations to support chosen politicians, fund staff and travel expenses, and the former president's favored election candidates.

20. Defendant SAJFC uses vexing automated text messages to reach as many potential donors as possible for their campaign.

21. Through information and belief the text messages were indiscriminately sent to millions of United States residents without regard to location, voting status, or residency.

22. Each and every text message at issue was sent to Plaintiff's phone number ending in 4604.

23. Plaintiff personally and successfully registered his phone number ending in 4604 to the National Do-Not-Call Registry in December 2007.

24. At all times material hereto, Plaintiff maintained and used a residential cellular telephone line, with a phone number ending in 4604.

25. At all times material hereto, Plaintiff was the subscriber of the telephone number ending in 4604 and paid his cell phone bill through Verizon Wireless.

26. Plaintiff never gave Defendant his phone number or prior express written consent to receive calls or text messages.

27. Plaintiff was not aware of Defendant's existence prior to receiving text messages from Defendant.

28. Plaintiff has no affiliation with either the republican or democrat party.

29. Each and every automated text message between. the dates of August 25, 2022, to November 06, 2022, was accompanied by a photograph of the former president Plaintiff along with varied messages stating, "update your Voter Verification Canvass survey IMMEDIATELY."

30. Each and every automated text message from Defendant SAJFC included variations of the link httos://win22.org/r.wr?id=LJ0JIXcH which all directed Plaintiff to a donation solicitation website. The automated text messages were not addressed to Plaintiff and ended with "ReplySTOPToEnd."

31. Text messages with "ReplyStop" (or some variation) are indicative of text messages sent via automated means that use automation to process "STOP" requests.

32. The text messages Plaintiff received were randomly generated and could have gone to anyone in the United States of America.

33. On November 06, 2022, at 8:07 AM, Plaintiff received a text message from Defendant addressing, "New York voters Only." Text messages on Table A labeled 7, 9, 11, & 15 all share similar content.

34. Plaintiff has never been a New York resident, has never been registered to vote in New York, or has never had a New York area code.

35. Through information and belief, Defendant SAJFC uses a texting platform that uses a random number generator to transmit automated text messages, generate fake caller identification, and used such random number generators to send Plaintiff text messages with spoofed called IDs.

6

36. Each and every text message sent to Plaintiff's cell phone was sent using a texting platform with the capability of using a random number generator for both sending text messages and spoofing caller IDs displaying nonworking telephone numbers.

37. On November 7, 2022, Plaintiff called each and every phone number to help verify the culprit behind the automated text messages but was met with "busy tone" beeps or disconnected telephone lines.

38. Each and every text message contained versions of the same message all coming from separate busy or nonworking telephone numbers.

39. Defendants routinely violate the TCPA as a part of their donation solicitation model and knowingly and willfully commit TCPA violations.

40. Table A below displays the text messages made to Plaintiff by Defendant.

TABLE A:

| Call: | Date: | Caller ID: | Time: | Outcome: |
|---|---|---|---|---|
| 1 | 08/25/2022 | 830-224-3695 | 9:55 AM | Automated text message |
| 2 | 08/25/2022 | 830-224-3695 | 9:55 AM | Automated text message |
| 3 | 09/07/2022 | 915-505-5525 | 12:46 PM | Automated text message |
| 4 | 09/07/2022 | 915-505-5525 | 12:46 PM | Automated text message |
| 5 | 09/08/2022 | 915-671-5615 | 9:39 AM | Automated text message |
| 6 | 09/08/2022 | 915-671-5615 | 9:39 AM | Automated text message |
| 7 | 10/11/2022 | 915-505-5488 | 3:56 PM | Automated text message |
| 8 | 10/11/2022 | 915-505-5488 | 3:56 PM | Automated text message |
| 9 | 10/25/2022 | 915-205-6765 | 3:15 PM | Automated text message |
| 10 | 10/25/2022 | 915-205-6765 | 3:15 PM | Automated text message |
| 11 | 11/04/2022 | 915-205-6721 | 4:27 PM | Automated text message |
| 12 | 11/04/2022 | 915-205-6721 | 4:27 PM | Automated text message |
| 13 | 11/06/2022 | 915-505-5387 | 8:07 AM | Automated text message |
| 14 | 11/06/2022 | 915-505-5387 | 8:07 AM | Automated text message |
| 15 | 11/08/2022 | 915-285-4865 | 2:25 PM | Automated text message |
| 16 | 11/08/2022 | 915-285-4865 | 2:25 PM | Automated text message |

41. Plaintiff has never had an established business relationship with Defendant or has never requested information from Defendant.

42. Each and every text message Plaintiff received from Defendant SAJFC was placed while knowingly ignoring the national do-not-call registry. Each and every text message was placed without training their agents/employees on the use of an internal do-not-call policy.

43. Plaintiff pays for each incoming and outgoing call on his telephone under an unlimited calling arrangement, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii).

44. Plaintiff received the text messages on his private mobile telephone, as defined and set forth in 47 CFR § 64.1200(a)(1)(iii). Plaintiff's telephone number is registered with Verizon Wireless as a cellular telephone number and is used for personal purposes.

45. Defendant's automated texts are not exempt from 47 U.S.C. 227(b) because they were not made for emergency purposes.

46. Defendant's text messages to Plaintiff were "telephone solicitations" as defined by the TCPA.

47. Defendant's text messages to Plaintiff were "unsolicited advertisements" as defined by the TCPA.

48. In summary, Plaintiff received sixteen (16) telemarketing calls from Defendants to Plaintiff's personal cell phone number which is registered on the National Do-Not-Call list.

### DEFENDANT'S USE OF AN ATDS

49. The text messages were sent using an Automatic Telephone Dialing System ("ATDS")' As the Supreme Court recently clarified, the key feature of an ATDS is the capacity to store numbers to be called using a random or sequential number generator or to produce numbers to be called using a random or sequential number generator. Facebook, Inc. v. Duguid, 141 S. Ct. 1163, 1167 (2021).

50. The inclusion of "ReplySTOPToEnd" in the text messages is an indication that the

messages sent by Defendants utilized an automatic telephone dialing system. It supports the inference that Defendants used an ATDS, such as on which "use[s] a random [or sequential] number generator to determine the order in which to pick phone numbers from a pre-produced list.' Facebook, 141 S. Ct. at 1171 n.7.

51. No facts exist here to support the conclusion that Defendants were texting from a curated list of their past customers or donors. Plaintiff had no prior relationship with Defendants.

52. The text messages were sent en masse to many individuals and were pre-written and not personalized in nature. Plaintiff has never provided his consent to be called or texted to Defendants.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

53. Defendants' calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

54. Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

55. Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone line.

56. Defendants' calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

57. Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.

### Plaintiff's Cell Phone is a Residential Number

58. The calls were to Plaintiff's cellular phone ending in 4374 which is Plaintiff's personal

cell phone that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 15 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays for the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

## CAUSES OF ACTION

### I. FIRST CLAIM FOR RELIEF

**Violations of the TCPA, 47 U.S.C. § 227(b)(1), by Automated Text Messaging Without Prior Express Written Consent
(Against All Defendants)**

59. Plaintiff incorporates and realleges by reference each and every allegation set forth in the preceding paragraphs.

60. Defendants violated the TCPA, 47 U.S.C. § 227(b)(1), by placing non-emergency automated text messages to Plaintiff's cellular telephone number using an ATDS without prior express written consent.

61. Plaintiff is entitled to an award of $500 in damages for each such violation. 47 U.S.C. § 227(b)(3)(B).

62. Plaintiff is entitled to an award of $1,500 in damages for each knowing and/or willful violation. 47 U.S.C. § 227(b)(3).

63. Plaintiff is also entitled to and does seek an injunction prohibiting Defendants from violating the TCPA, 47 U.S.C. § 227(b)(1), by placing non-emergency telemarketing calls and/or

text messages to any cellular telephone number using an ATDS without prior express written consent.

## II. PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the defendants jointly and severally as follows:

A. Leave to amend this Complaint to conform to the evidence presented at trial;

B. A declaration that actions complained of herein by Defendants violate the TCPA;

C. An injunction enjoining Defendants and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D. An award of $1500 per text in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation for sixteen (16) calls.

E. An award to Plaintiff of damages, as allowed by law under the TCPA;

F. An award to Plaintiff of pre-judgment and post-judgment interest, and costs, as allowed by law and equity

G. Cost of suit herein incurred; and

H. Such further relief as the Court deems necessary, just, and proper.

November 10, 2022  Respectfully submitted,

*[signature]*

Brandon Callier
Plaintiff, Pro Se
6336 Franklin Trail
El Paso, TX 79912
915-383-4604

## I. Demand for Jury Trial

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: November 10, 2022

*[signature]*

Brandon Callier
Plaintiff, Pro Se
6336 Franklin Trail
El Paso, TX 79912
915-383-4604